UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 04-CR-20169-SEITZ

UNITED STATES OF AMERICA

v.

ARMANDO GARCIA,

    Defendant.
_____/

## ORDER DENYING RENEWED MOTION TO REDUCE SENTENCE BASED ON COMPASSIONATE RELEASE

This matter is before the Court on Defendant's *pro se* Motion for Reduction in Sentence [DE 157], which seeks a reduction based on "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i). Two years ago, Defendant was denied a similar motion for compassionate release, as well as a motion for reconsideration [DE 149, 156]. The Government has responded to the renewed Motion [DE 161], and Defendant has replied [DE 164]. The Court has considered the parties' filings, the record, and the applicable law. Because Defendant's cited health bases do not sufficiently satisfy U.S. Sentencing Guidelines § 1B1.13 to entitle him to relief, Defendant's Motion is DENIED.

    **I.    Background**

Defendant Armando Garcia's criminal history, convictions, and sentences are detailed in the earlier Order Denying Motion to Reduce Sentence Based on Compassionate Release [DE 149 at 1-3], entered a little more than two years ago. To highlight his health changes since then, Defendant has filed with this renewed

1

Motion some of his Bureau of Prisons ("BOP") records [DE 157-1, 157-2, 160]. Garcia is 66 years old and currently serving his sentence at FCI Butner in North Carolina. He has served more than 18 years to date. His recent records indicate that he is subject to removal proceedings in contrast to his earlier records.

## II. Legal Standard

### A. Compassionate Release

A court may only modify a sentence "when authorized by statute or rule." *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015) (citation omitted). The limited circumstances for doing so are set forth in 18 U.S.C. § 3582(c). *See U.S. v. Maiello*, 805 F.3d 992, 999 (11th Cir. 2015). Among these, a court can modify a sentence upon a defendant's motion if "extraordinary and compelling reasons" justify a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Congress has tasked the U.S. Sentencing Commission to identify such reasons. *Id.*; 28 U.S.C. §§ 994(a)(2)(C) & (t). Section 1B1.13 of the U.S. Sentencing Commission's Guidelines offers this detail. Specifically, it describes the following four bases:

(A) Medical Condition of the Defendant.

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is

        (I) suffering from a serious physical or medical condition,
        (II) suffering from a serious functional or cognitive impairment, or
        (III) experiencing deteriorating physical or mental health because of the aging process

>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.  The defendant
>
>   (i)   is at least 65 years old;
>   (ii)  is experiencing a serious deterioration in physical or mental health because of the aging process; and
>   (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) …[1]
>
> (D) Other Reasons.  *As determined by the Director of the [BOP]*, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2022) (emphasis added).  Since Garcia's earlier motions for compassionate release and reconsideration were denied, the Eleventh Circuit Court of Appeals has clarified that a court cannot substitute its discretion under Subdivision (D) for that of the Director of the BOP.  *United States v. Giron*, 15 F.4th 1343, 1346 (11th Cir. 2021) (citing *United States v. Bryant*, 996 F.3d 1243, 1263-65 (11th Cir. 2021)).  "Extraordinary and compelling reasons" are limited to those described in Subdivisions (A) through (D) in § 1B1.13's Application Note.  *Giron*, 15 F.4th at 1346.

### B.   18 U.S.C. §§ 3553(a) and 3142(g)

In addition to satisfying one of the above-noted Subdivisions, a defendant must also demonstrate that release is appropriate under 18 U.S.C. § 3553(a), and

---

[1] Defendant has not stated any claim relevant to Subdivision (C)'s family dependency bases.

3

that he is not a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g).  18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(2).  A court, however, need not reach consideration of §§ 3553(a) or 3142(g) if the motion otherwise fails under 18 U.S.C. § 3582(c)(1)(A), i.e., a Subdivision of § 1B1.13's Application Note is not satisfied.  *See Giron*, 15 F.4th at 1347.

### III.   Discussion

#### A.   The Parties' Positions[2]

Garcia seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).[3] Principally, he cites a list of health reasons, several of which were part of his earlier motion, to argue that he qualifies under Subdivisions (A) and/or (B) of U.S. Sentencing Guidelines § 1B1.13's Application Note.  He claims that his health has deteriorated in the past two years due to the after-effects of his testing positive for COVID-19 in November 2020.  He focuses, in particular, on his heart condition, which he claims qualifies as a terminal illness under Subdivision (A), and which ultimately required a pacemaker.  In addition to his heart issues, he complains post-COVID 19 of increased joint, back, and leg pain.  Garcia also points to the ongoing specter of COVID-19 and the unique challenges it poses to the penal setting.  As far as his rehabilitation, Garcia cites his work and behavior records, education accomplishments, and lists his efforts to improve himself, including

---

[2] Defendant's *pro se* filings are construed liberally.  *See Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

[3] Defendant states that he was denied compassionate release by his warden, and that his appeals were denied as well.  He has attached to his Motion evidence that shows his careful adherence to these administrative procedures [DE 157-2 at 104-19].  The Government acknowledges his exhaustion of administrative relief [DE 161 at 6-7].

4

helping others through tutoring and preparation of legal materials. His motion includes letters from family, friends, fellow inmates, and attorneys who support his release, along with a suggested reentry plan. Some of the above information and materials were also provided as part of his earlier motion.

Taking a closer look at his health, Garcia identifies several issues, including "a heart failure condition, an AV block, [b]radycardia, a permanent pacemaker implant, carotid artery block, high blood pressure, osteoarthritis, and presbyopia, among others" [DE 157 at 4-7; 157-2 at 105].[4] His BOP medical records describe many of them. For example, they note AV blocks, bradycardia, and shortness of breath when walking [DE 160-1 at 17]. In a visit on June 15, 2021 (prior to tests determining he needed a pacemaker), Garcia complained of shortness of breath and a racing heart, but his vital signs were "WNL,"[5] and he was discharged after reviewing a plan to manage his conditions [DE 160-1 at 18]. In his most recently provided BOP Individualized Needs Plan from August 17, 2022, he has two current care designations – a Care 1 for mental health,[6] and a Care 3 noted as "unstable, complex chronic care." His current medical duty status assignments indicate that

---

[4] This Order focuses on health issues raised or changed since the Order Denying Motion to Reduce Sentence Based on Compassionate Release [DE 149], entered June 25, 2020, since that earlier Order considered Garcia's health issues in the record up to that date. This Order, however, restates some of his earlier conditions.

[5] The Court presumes this means "within normal limits."

[6] Despite this designation since 2010, his records from August 2020 note that "Psychology staff have not expressed mental health concerns at this time" [DE 157-2 at 24].

he is cleared for regular duty and has no medical restrictions,[7] and that he is cleared for food service.

His BOP records demonstrate productive use of his time. As noted in the prior Order, Garcia has taken advantage of BOP course offerings and those outside BOP to enroll in various programs, and he has worked several jobs assignments. While he was designated "medical convalescence" at the time of his previous motion for compassionate release, he is currently assigned to work "facilities paint detail" [DE 157-2 at 3]. He appears to have no new discipline incidents.[8]

The Government argues that Garcia fails to demonstrate that he qualifies for a sentence reduction. It contends that little has changed in terms of Garcia's health since the prior Order, except for the implanted pacemaker in July 2021. The Government concludes that many of his conditions are not uncommon for someone his age, and that they have already been considered by the Court in the prior Order. As for COVID-19 concerns, the Government states that Garcia's testing positive for the virus, combined by his vaccine, eliminate concerns of serious recurrence complications. Finally, even if Garcia had provided a viable basis for compassionate release, the Government continues, sentence reduction would still be inappropriate based on consideration of the 18 U.S.C. § 3553(a) factors, notably, that he still has not accepted responsibility for his criminal actions.

---

[7] The Court deduces this from the phrase "No medical restr—normal duty" from the related BOP record. Further details of his BOP medical records are discussed in the next section of this Order.
[8] He was disciplined once in 1997 for assault without injury, and once in 1998 for fighting.

### B.   Basis for Court's Determination

At the time of his earlier compassionate release denial, Garcia had acknowledged that none of his medical conditions were terminal or seriously deteriorating under the standard of § 1B1.13 of the Sentencing Guidelines. Thus, the Court's first focus is on what has changed since that Order, entered June 25, 2020.

Most notably, in addition to his many health conditions – some new, most longer standing [DE 160-2] – Garcia's BOP medical records support his claim that his pacemaker's installation occurred "urgently" in July 2021 [DE 160-1 at 23-25]. Thankfully, the procedure appears to have been successful [DE 160-1 at 32-33]. Since this procedure, however, Garcia's medical records do not offer any indication that his pacemaker renders his condition terminal, or that it alone (or in combination with other illnesses) has led to "serious" deterioration of his health.

For example, in a medical visit from October 13, 2021, observations include that his hypertension varies and might require a change in medication, and that his pacemaker "[n]eeds to be on [an] interrogation list" [DE 160-5 at 16], i.e. needs to have its data periodically assessed. Nonetheless, Garcia was discharged and advised to follow-up as needed in the future with medical services [DE 160-5 at 21]. The following month, his pacemaker data had been assessed, and the determination was made to reassess pacemaker data again in three months [DE 160-6 at 11] (which seems to have occurred [DE 160-6 at 32], and periodically after that [DE 160-6 at 53]). In another visit the following month, the doctor noted that Garcia

"ambulates to office without difficulty," and also noted, "BP at goal today"[9] [DE 160-6 at 3]. His blood pressure was noted as at goal in March 2022 at a visit as well [DE 160-6 at 45]. It is noteworthy that on March 25, 2022, Garcia reported chest pains at a medical visit, but noted that they had gone away. He was advised to return if the chest pains returned [DE 160-6 at 43]. The provided records, however, do not reflect any subsequently conducted procedures.

Thus, Garcia's records provide little support to conclude that his pacemaker means his heart condition is at an end-stage (under Subdivision (A)(i) of § 1B1.13's Application Note) or, alternatively, that he has "experienc[ed] a serious deterioration in physical...health because of the aging process" (under Subdivision (B)). They, instead, reflect regular visits to monitor his health, including to assess his pacemaker's data, and to treat what appear to be notable but less critical health conditions. None of these visits since his pacemaker, for example, have resulted in hospitalizations, emergency procedures, prognoses of future decline, or the like. Instead, they illustrate persistent medical monitoring of an older man who has had COVID-19 and who has a new pacemaker. Likewise, none of his less critical issues, either alone or in combination, appear to be worsening, let alone at the "serious" stage required by Subdivision (B).

To support the seriousness of his heart condition argument, Garcia cites *United States v. York*, Nos. 3:11-CR-76; 312-CR-145, 2019 WL 3241166 (E.D. Tenn. July 18, 2019), and *United States v. Rice*, No. 90-CR-00768-Seitz, 2020 WL 4333527

---

[9] The Court assumes that references to "BP" in Defendant's records are to his blood pressure.

8

(S.D. Fla. June 8, 2020). Both cases, however, are distinguishable on the facts and further highlight why Garcia's conditions fail under either Subdivision (A) or (B). First, in *York*, defendant was a wheelchair-bound paraplegic amputee housed in a BOP palliative care unit. 2019 WL 3241166 at *2-3. Among other health conditions, defendant suffered from post-polio paralysis, kidney failure, and had suffered multiple heart attacks due to his congestive heart failure. *Id.* The Government in *York* had noted that heart failure *can* be a terminal condition but ultimately argued that the defendant's condition was not as severe as he claimed. *Id.* at *3 (emphasis added). In *Rice*, the defendant had previously suffered a heart attack and a stroke and suffered from chronic kidney disease. 2020 WL 4333527 at *2. The velocity of 78-year-old Rice's health deterioration immediately before his release was notable.

> The Government states that it spoke with a medical staff member at FCI Edgefield who "confirmed that Rice's physical health has deteriorated in the past year" [DE 410 at 16]. The basis in the record supporting this observation is three-fold. First, from Rice's March 28, 2018, to September 18, 2019, medical examinations, his list of illnesses increased by almost half – from 12 to 17 conditions. Second, whereas he didn't require a walker at the time of his 2018 examination, he required it by his 2019 examination. Third, Rice required serious and significant hospitalizations in 2019 related to his illnesses. For five days in February, he was hospitalized for an acute urinary tract infection and acute renal failure. In March, he was hospitalized for nine days for pneumonia, acute febrile illness, sepsis, acute kidney injury, atrial fibrillation, and acute respiratory failure with hypoxia. Again, in August 2019, he was hospitalized for a recurrence of pneumonia.

*Id.* at 5. As discussed above, such decline is not the case with Garcia, nor does his condition appear terminal. The Court does not intend to minimize the seriousness of Garcia's heart condition, or the other apparently less serious post-COVID health complications that he suffers. But, unlike the two above-cited cases, the record does

9

not support the conclusion that his condition is terminal or that he has seriously deteriorated since the Court's last Order.

Garcia also cites *United States v. Creamer*, No. 3:19-cr-168-TJC-JBT, 2022 WL 195311 (M.D. Fla. Jan. 21, 2022), to argue that congestive heart failure should be treated as a terminal illness, but that case acknowledges that all congestive heart failures should not necessarily be treated as such. Despite the cited medical language regarding the progression of heart failure, the court also acknowledged that the progression of the disease in each case should determine whether it qualifies as "terminal" under Subdivision (A). *Id.* at *3 (citing *United States v. Oneal*, No. 20-13533, 2021 WL 5894858, at *2 (11th Cir. Dec. 14, 2021) (affirming district court holding that defendant's congestive heart failure did not qualify as terminal)). In *Creamer*, the defendant had been on a transplant list due to the "severe, end-stage" status of his congestive heart failure. *Id.* Garcia's provided medical records do not support a similar classification. Likewise, the Court cannot reach a similar conclusion.

Granted, as Garcia points out, neither defendants in *Rice* or *York* had yet received pacemakers, but the medical import of such fact is not clear among the provided BOP medical records, nor is it within the Court's discretion or expertise to muse whether an individual without a pacemaker is more or less terminal than someone with an effectively functioning pacemaker. As Garcia must be aware, some individuals live fruitful lives for many years with pacemakers.

10

Garcia's alternative argument – that his medical conditions collectively qualify under Subdivision (A)(ii) because they impair his ability to provide self-care – are conclusory, inadequately supported by the record, or misdirected.[10]  He acknowledges that his medical records describe him as ambulatory, and argues that BOP guidelines for diminished self-care should not be equated with the standard under § 1B1.13, but he provides no further argument or evidence as to his inability to manage his own health.  Dr. Graham D. Keats, on December 20, 2021, in response to Garcia's most recent request for release on this basis, wrote that Garcia is "ambulatory on the compound without difficulty and is completely independent with his [activities of daily living]" [DE 157-2 at 106; 160-6 at 3].  Garcia admits that he "is still able to walk with great effort and can still perform the physiological necessities without assistance" [DE 157-2 at 116].

Instead, Garcia seeks to expand the standard of diminished self-care to include delays in obtaining medical care.  If Garcia, in fact, is not receiving prompt medical care, the Court can understand and sympathizes with his frustrations.  From his argument and the record, however, he appears to take issue with not seeing in person a cardiologist after his pacemaker procedure (although he has been treated by others).  This is not an instance where the Court can or will second-guess the propriety of his doctors' medical plan for him.  At any rate, Garcia raises a novel

---

[10] The Court assumes without deciding, for purposes of this analysis, that Garcia could otherwise satisfy one of Subdivision (A)(ii)'s other requirements, i.e. that Defendant suffers from a serious condition or is experiencing deteriorating health due to ageing.

11

definition of diminished self-care,[11] but not one with a controlling authority, and the Court declines any invitation to apply this standard from § 1B1.13 so broadly.

Finally, Garcia's concerns about the continuing COVID-19 threat are well-taken. As Garcia astutely notes, however, given *Bryant*, such concerns would have to speak directly to one of the Subdivisions discussed above, as opposed to Subdivision (D). The cases he cites in his favor on this issue rely (either directly or indirectly) on Subdivision (D), come from other jurisdictions, or were decided before *Bryant*. While COVID-19 issues persist, Defendant does not provide evidence as to how they satisfy one of the other Subdivisions with respect to his conditions as terminal, seriously deteriorating, or relating to self-care. Thus, they do not change the Court's analysis. As a result, they do not ultimately offer Garcia an avenue for relief.

As the Court has previously acknowledged [DE 149 at 13], a life sentence for Garcia is unwarranted. He has demonstrated productive and commendable behavior and use of his time while imprisoned, and he is preparing positively for a return to society.[12] The Court continues to be concerned, however, that Garcia has not truly come to terms with the fact that it was *his* own choices that led him to prison. Garcia did not offer any self-reflection on this point until after the Government in its Response challenged whether he had accepted responsibility for

---

[11] Garcia also posits a novel interpretation of *Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022) [DE 164 at 2].
[12] Garcia has begun to develop a reentry plan [DE 157 at 42]. To the extent he can continue to flesh it out with more detail, the Court would hope that such could aid his efforts seeking administratively relief directly with the BOP.

his actions. Garcia's mental preparation – recognizing that society has a system of rules and laws to which he is subject, and in which he exercises freedom and responsibility for his decisions – is the first step to preparing himself to reenter society and avoid recidivism. Given this shortcoming, and the failure to satisfy a subdivision of § 1B1.13's Application Note, Garcia's Motion must fail.[13] Therefore, it is

ORDERED THAT

1. Defendant Garcia's Motion for Reduction in Sentence [DE 157] is DENIED.

2. Defendant Garcia's Motion Requesting Expedited Briefing and Ruling [DE 158] is DENIED AS MOOT.

DONE AND ORDERED in Miami, Florida, this 6th day of December, 2022.

*Patricia A. Seitz*
PATRICIA A. SEITZ
UNITED STATES SENIOR DISTRICT JUDGE

---

[13] Because Defendant has not demonstrated an extraordinary and compelling reason, the Court does not reach any further analysis of 18 U.S.C. §§ 3553(a) and 3142(g). *See Giron*, 15 F.4th at 1347.